Good morning, Your Honors. Michael Reese on behalf of the Plaintiff's Appellants. With your permission, I'd like to reserve two minutes for rebuttal. Keep an eye on the clock there as it counts down. I will, Your Honor. The issue before the Court is fairly straightforward and simple, and that is when the statute of limitations for the securities fraud claims in this action began to run. Statute of limitations is governed by 28 U.S.C. section 1658B, which states that the statute of limitations is two years after the discovery of the facts constituting the violation. The United States Supreme Court has recently ruled on exactly what that means in the Merck v. Reynolds case, which came out in 2010. And in Merck, the Supreme Court ruled that the statute of limitations does not begin to run on the claims at issue here before Your Honors until, and this is a direct quotation, a reasonably diligent plaintiff would have discovered the facts constituting the violation, including Sienter. That's very important because Sienter is one of the key elements for the securities fraud claim at issue here, which is violation of section 10B of the Securities Exchange Act of 1934. Sienter is the mental state embracing an intent to deceive, manipulate, or to defraud. So you actually have to have facts regarding that specific element of the claim to be able to have the statute of limitations start running. This case involves securities fraud involving mutual funds. The facts constituting Sienter did not become known to anybody, a reasonable diligent plaintiff, until made public by the California Attorney General's Office on March 23, 2005, when the California Attorney General's Office sued various of the defendants at issue here for violating state securities fraud. Mr. Reese, Judge Feese seemed to place a great deal of emphasis on a case pending, I don't know if it was before him or before another judge in the Central District of California, asserting the identical claims that had been filed in 2004, and apparently one of the lawyers on the plaintiff's side in this case was also on the complaint in that case. That's the Corby case. In fact, that attorney was myself. That's you? That is me. So why didn't you know in 2004 if you filed the lawsuit? What's important to note is that the Corby case does not assert the same claims. It asserts claims under the 1940 Act. But the question is not whether the claims are identical. The question is whether or not you discovered sufficient facts of Sienter. So if you made those allegations in 2004, you must have felt like you had discovered a provable case of securities fraud. Well, and that's why the claims are different and the elements are different. In the Corby case, none of the elements involve Sienter. You can scour the Corby complaint and not a single – Sienter is not used. Now, I understand why the – Are you suggesting that the Corby complaint did not allege Sienter? That's correct. Are you suggesting that it didn't need to allege Sienter? That is correct. And in fact, I understand why your honors may be misled because the defendant's brief takes a quotation from the Corby action and puts in the words with Sienter. That is not in the Corby complaint. And we point that out in our reply piece saying that's really kind of disingenuous to use that term with Sienter. And they put with emphasis. You can look through the Corby complaint. It's not in the Corby complaint at all. But your whole theory in Corby is identical to your theory in this case, which is that these commissions were undisclosed deliberately in order to hide from investors in the mutual fund shares the true cost and the nature of the kickback in order to induce the additional sales of shares and that that somehow compromised the objectivity of the investment advisor's advice as to whether or not the stock should be purchased. Is that your theory? In this case or in the Corby case, my understanding of this theory is that the fees were excessive. And under the Gartenberg standard, which doesn't apply to a 10B claim, but applies to a 1940 Act claim. We're dealing with 1934 Act claims here, not 1940 Act claims here. You keep focusing on claims. I'm trying to focus on facts. And the facts are the same whether, yes, the fees are excessive. The question is were they disclosed to the investing public? And your theory is they were not and that it was done intentionally in order to hide from the market the kickbacks, to use a pejorative term. If you take the Corby complaint and the operative complaint in this action, there are radically different facts. There are not enough facts in the Corby complaint to make out a scienter allegation. And as I stated before, you do not have to have. Without regard to elements, isn't my statement true with regard to both cases? That one of the key facts in the 2004 litigation and the key factual assertion here is an intent to mislead, misrepresent the nature and manner in which these commissions were paid. I do not believe that the element of intent to defraud is an element in the Corby complaint. Well, I looked at the Investment Advisors Act. It seems to me the Corby complaint alleges a violation of the Advisors Act. The Corby complaint alleges that the defendants violated Section 215 of the Act. When I go to 215, and then it says, By failing to comport with the fiduciary standards set forth in Section 206 of the same Act. Now, my worry is that if I look at 206, and that's why I'm reading here. 206.1 doesn't, or 206.2 doesn't require scienter. But it seems to me that 206.1 cannot be pled without alleging scienter. Section 206 of the Investment Advisors Act, the plaintiffs in that case are the funds themselves. It's a derivative claim brought on behalf of the funds. A 10B claim is brought on behalf of the consumers that actually pay the money into those funds. So the 10B intent to deceive is the intent to deceive the actual investors in those funds. It also says in the complaint that defendants acted knowingly and or recklessly. That was the allegation. Are you saying that isn't scienter? But those pertain to, it's not scienter with respect to a 10B claim. That's not the statement in the Investment Advisors Act claim that those defendants intended to deceive investors. What the investment advisement claim is, there was an intent to hurt the funds by charging excessive fees. And then it's subject to the Gartenberg standard. That is not the issue here. The issue here is what were in the prospectuses that were given to consumers. How were the investors? How were the investors deceived? That pertains to the 10B claim. I guess my worry is that if I'm trying to determine whether one would find scienter, which is what we're really looking at here, and I look at what you alleged as relates to the Investment Advisors Act, it would be a hard thing to allege a violation of 215 failing to comport with the fiduciary standards of 206 and not know you can't have a violation of 206-1 without scienter. I think it's also important to focus on the fact that the pleading standards for a 10B claim and any claim asserted in the Corby Act are significantly different. Under the Private Security Litigation Reform Act of 1995, Congress said there's a heightened pleading standard. You need particularized facts. Based upon information and belief is simply not enough. The Supreme Court in the Merck decision said that's exactly what you have to show to show that the statute of limitations begins to run. If you look at the specific facts in Merck, you had lawsuits, you had governmental action, you had stock drop, and the Supreme Court said all of those factors were not enough to start the triggering of the statute of limitations in that case. The Second Circuit has also spoken directly on this matter in the STAEHR, that's S-T-A-E-H-R, the Hartford Financial Services case in 2008. And in that case, you had almost identical facts to those presented here. You had four other lawsuits, a class action lawsuit based upon the same, at least one of them which was based upon the same exact conduct. And the Second Circuit said in that case, those weren't enough to trigger the running of the statute of limitations. And it's important to note because that was under even a more lenient standard for defendants. That was under this old inquiry notice standard that was still effective at that time. There's a significant difference here because Merck did away with that. Merck said you have to be able to discover the actual facts constituting the elements. And what facts do we have here? We have facts that were revealed for the first time pursuant to governmental subpoena by the AG's office, California AG's office on March 23rd, 2005, which included e-mail, which included other internal documents from the defendant's own files that only a governmental entity could get. Until 2004, if I understand it, the Securities and Exchange Commission did not declare this directed brokerage practice illegal, did it? It didn't prohibit it. There were some investigations that had already started, and the defendants cited a number of those in their brief. Actions that were brought by the SEC in 2003 and 2004. Right, but I'm saying that at the time that the money was diverted, you're claiming, what, $475 million is your claim, right? Correct. But that was not, the SEC had not prohibited mutual funds from doing this at that time. Well, the SEC, at least with respect to 10B claims, it's all based upon disclosure. What is disclosed to the consumer? If you wanted to say, we're going to use this money, and instead of actually shipping computers, we're just going to ship bricks and boxes, and you disclose that to investors, it's up to the investor to realize that. But what the SEC starts saying in 2003 and 2004 is, this practice that you're engaging in wasn't properly disclosed to consumers. Now, what's interesting is in 2003 and 2004, defendants say, well, all of a sudden the SEC started bringing these actions. They brought them against various mutual funds, and they brought them against just like American funds, and they also brought them against the brokers that were accepting these kickbacks. But none of those SEC actions mentioned the American funds. And in fact, the newspaper reports that defendants cite to saying, well, look, this shows that people should have known about this, says that while there's an industry-wide investigation going on, and American funds was one of the 50 or more companies being looked at, that didn't indicate there was any wrongdoing. In fact, probably many of those mutual funds didn't do anything wrong. There's a July 2004 New York Times article that defendants cite to, which says American funds, the defendants in this case, in fact have benefited from this because people are assuming based upon what's out there in the public realm that they have not engaged in this behavior and are flocking to American funds, and American funds has gained more and more. So it came as complete shock to everybody when on March 23, 2005, the California AG's office revealed what exactly was going on, revealed through the internal document that it had received through subpoenas, which a normal consumer cannot get those documents. It revealed for the first time that the magnitude of this was more than $450 million. And it was at that point where there was then enough facts, that there were particularized facts that could meet the scienter element. And it was within two years of that that this complaint was filed. If the court agrees that March 23, 2005 is the earliest anybody could have had enough particularized facts to meet the pleading standard for scienter and for materiality as is required by Section 10B, as the Supreme Court says, must be met to have the statute of limitations start to run in the Merck matter, this complaint is timely because it was filed well within two years of that. Mr. Rich, you wanted to say something. I don't know if Judge Smith had it. Well, he didn't address what I think is maybe a tougher issue. Why shouldn't I dismiss this complaint for failure to state a claim? Because he hasn't pled scienter in it now. Your Honor, I can address that now or I can address it on rebuttal. You can address it now. I will address it now. The lower court did not address that issue. So? You certainly have the ability and right to address that issue. Well, I know. That's why I said so. The facts in the complaint are very detailed and show scienter. I read the complaint. The best I've got is the defendant failed to disclose the directed brokerage assignments with brokers, knowing that if the truth were revealed, no reasonable investor would invest, or these disclosures were false and misleading because they failed to state or otherwise disclosed. And this is important, that portions of such stockholder fees and operating expenses are in fact paid as kickbacks to selling agents, and because it implies that only compensation to the selling agents paid by the shareholders are sales charges. It doesn't seem to me that's scienter. Your Honor, may I point to the record where there is scienter? Well, where in this complaint? Because I've read the complaint and I pulled out your best allegations in my view. Paragraph 18. Okay. Which is in the record at 130. Paragraph 2, which is that paragraph on the record. I didn't want to give me the language. Sure. Paragraph 18 talks about the magnitude, and you can determine scienter through the magnitude. $425 million. It's hard to believe that defendants wouldn't have known that an amount of that much money was being siphoned off and paid to unauthorized sources. There are email, including one that states, How does this work? I've come to believe that kickbacks describes this deal better than the term revenue sharing. There is something dirty about the mutual fund business that has been developing over the last five years. I hate that I feel this, but I do. Maybe it's the time the SEC. Is that in the complaint? It is in the complaint, Your Honor. Where? It's paragraph 2. 2? Paragraph 2. It's at the record 100, page 120, the record 125. Okay. We also. I understand your argument. I didn't see it in 2. We also cite the internal documents, including the sponsorship agreements. That's at paragraph 20, which is at page 130 of the record. We cite the actual staff members that were appointed in charge of the kickback revenue sharing, that issue here, and that's paragraph 22 at page 130. We have the calculation regarding the kickout payment targets. That's at paragraph 21 of page 130 of the record. My worry is that in your efforts to show that there was in no way we could have discovered Sienta earlier, that you provide us with ample evidence indicating there's no Sienta at all. Your Honor, the point is before March 23, 2005, there was not enough particularized facts in the record or in the public realm to indicate Sienta. What happened on March 23, 2005, is that the California Attorney General's Office sued the defendants and included within their lawsuit a number of internal documents, many of which I just cited to you, including email, including other internal documents, that the California Attorney General's Office obtained from defendants' own files pursuant to the California AG's subpoena power. And those internal documents, which were made public on March 23, 2005, evidence the Sienta. If Your Honors are going to rule on a Sienta issue here, we would also, to the extent you think there's not enough Sienta, and I have more paragraphs I can go through, that cites evidence that was not available. To the extent that I don't think you've pled Sienta, what do I do? I believe that the, assuming that the statute of limitations issue is reversed, it should go back to the lower court and we would seek leave to amend because there are additional facts that we could allege regarding Sienta. Sienta is a very fact-specific question. We have never had a chance to amend the complaint on that particular issue after ruling by the court on that issue. And so we would seek leave to amend if such, if that is the court's ruling. Okay. Let's hear from the others. Thank you. Good morning. May it please the Court. My name is Jim Benedict from Milbank-Tweed, Council 2, Defendants' Dachau-Pralese. I'd like to address a couple of the points raised by my opposing counsel. First, to follow up on a point, Your Honor, Judge Talman, that you made, Corby does assert virtually identical claims in substance. They're different causes of action, but they're in substance the same thing. And what the plaintiff's lawyer did when you compare those complaints, the same plaintiff's lawyer that filed Corby two and a half years later marked up the Corby complaint and filed it as the Chin complaint. Am I off base when I was trying to differentiate between key facts and he wants to talk about claims? But the answer requires facts. It does. And the essence of what is challenged in both Corby, the original Corby complaint and the Chin complaint, is the same. And it's evidence, Corby is evidence, of what a reasonably diligent plaintiff could, should, and did discover more than two and a half years prior to the filing of the Chin complaint. Now, if you look at Corby, it asserts fraud claims. Section 206 of the Investment Advisors Act, that is a fraud claim. Section 34B of the 40 Act, Investment Company Act, is a fraud claim. And the essence of the fraud was the failure, the alleged failure, of the capital group defendants not making revenue-sharing payments to brokers and not fully disclosing the facts of those payments in fund prospectuses. And yes, it does allege scienter. And this was a point, Judge Smith, you brought up. If you look at the Corby complaint filed in July 15, 2004, and you look at the record, it's paragraph 89 of the complaint, in ER 91-92, it says, I'm quoting, defendants allegedly engaged, quote, in a deceptive, contrivance scheme, practice, and course of conduct, and then later it says, that knowingly and or recklessly. That's scienter. I looked up scienter in Black's Law Dictionary. The first definition of scienter is knowingly. And that's what they pledged. So whether, so the plaintiff here pled scienter, or at least attempted to plead it. Now, he has Rule 11 obligations when two and a half years later, he's pleading a 10b-5 claim. The essence of that is the same failures to disclose. He's just putting it under the caption 10b-5. Virtually identical allegations, as we pointed out in our brief. Carbon copy identical allegations in many respects. And these were supposedly made consistent with Rule 11. So he thought he had sufficient facts to plead that. So all one has to do is compare, and I emphasize, it's the original Corby complaint. He likes to talk about, excuse me, the original Chin complaint, which is in the record at 179-193. That is a 14-page complaint that is the carbon copy of Corby. He later, seven months later, attempts to amend that complaint and puts in additional detail. But even there, that detail is minor details that really go to the mechanics of how revenue sharing worked. Let me also address the Starr case, which is a Second Circuit case. And that is readily distinguishable from the case here. Starr references newspaper articles. It has to do with alleged kickback scheme in the insurance industry between the insurance company and brokers. But the articles there, with one exception, did not mention the defendants. The articles there were not from the mainstream media. They were from the trade press. And a third distinction is the plaintiff there was an expert in insurance law from Wilson Elser, which is a firm that specializes in insurance. So what he knew or didn't know, they didn't find to be typical here. There's no allegation whatsoever, assertion that Corby was not a reasonable plaintiff. The articles here, and there's a plethora of them, going back to November of 2003, in contrast here, describe the alleged scheme expressly, named Capital Research in the American Funds. In fact, a couple of the articles are solely directed to the defendants here. And we're talking about a front page Wall Street Journal article and the front page of the New York Times business section. And these articles are coming from well-known publications, the LA Times, Wall Street Journal, New York Times. In addition to that, there are... Yes, Tom. Isn't it true that clearly those articles describe directed brokerage? The question is whether or not they would have put a reasonable plaintiff on actual notice of facts that would establish C enter. Nobody's being accused of fraud in those articles, are they? Well, fraud is discussed. Fraud, deceit, conflicts of interest are all being bantered about. There's discussion in those articles about the SEC administrative proceeding against MFS. That was a section 206. That is fraud. Section 17A, which the SEC brought against Morgan Stanley, that is fraud. Section 34B, also in the SEC proceedings, that is fraud. So, yes, fraud is being bantered about. And there can't be any doubt there would be reason to disagree here on a motion to dismiss but for the filing of the Corby complaint. That is evidence of what was in fact known by a reasonable plaintiff exercising due diligence more than two and a half years prior to the filing of the Chin complaint. Now, Judge Gilman, you raised the point about directed brokerage, which was one of the two types of, quote, shelf space payments that are being challenged here. You're absolutely right that that was not disallowed by the SEC until late 2004. But more importantly here, the American funds discontinued that practice before the SEC even made it illegal. And then it also should be known that in the interim here, the plaintiff wants to make much in his complaint about the NASD imposing administrative sanctions on the defendants here for engaging in directed brokerage. They did, but that ruling was overturned by the SEC where they found there was no violation and vacated the sanctions. So that was a discontinued practice. What was being done, this revenue sharing, although plaintiffs want to put a pejorative spin on it, was a perfectly legal practice. The SEC was concerned because it had potentials for conflicts of interest, no question about that. My worry, frankly, counsel, is that the district court had in front of it the Merck standard and it was trying to apply the Merck standard. But I worry that the district court did not consider the idea that the investors did not discover or should not have discovered this the enter before March the 23rd of 2005. Now, my worry is that the California Attorney General's complaint might have put them on notice. I mean, that could be for sure. But I'm talking about prior to that. When you look at the California Attorney General's complaint, all it is is additional mechanical details. I read that carefully. There's nothing that goes to say enter in the California. After all, the emails are pretty strong. I don't know whether or not those would be admissible or not. I don't know. The email that's quoted in the complaint is what an Edward Jones broker thought about an Edward Jones practice. I looked at that and I thought, well, that's nice, but is it admissible evidence? I think if that was known, that might start an inquiry notice, right, and there would be reasonable diligence in what one would then find. Then you'd find all these SEC press releases, the SEC administrative proceedings, and then that would lead one to do what the Corby plaintiff did, in fact, filed a fraud claim. Now, that case got dismissed, but at least it was filed, and I believe it was filed in good faith in 2004. And I should say that the time Corby was filed, is there any doubt about these practices being well-known? There were lawsuits filed by the plaintiff's bar at the same time as Corby against 20 other investment advisors all over the country. There are literally hundreds of articles out there. This was very much a debated process. Now, the SEC got some findings or got some finds from certain people, but the SEC dropped its case against the American Funds and Capital Research here. That was in 2011, right? No, the SEC dropped the case in 2008, just a couple of days before the California Attorney General discontinued its action. It wasn't, Your Honor, Judge Smith, it wasn't until June of 2011 that the SEC, after sitting on it for three years, finally overturned the NASD. I guess my worry when I read the district court opinion is that he seemed to be employing, if I was reading, an inquiry plus reasonable diligence test. I think that's what the test was, but my worry is that inquiry is not the end of the Betz test. What we're really looking at, once you're on inquiry, in the exercise of reasonable diligence, should the plaintiff have discovered the facts constituting the alleged fraud. I agree with you, Judge Smith. In what the judge did, Betz, which was the law of the land in this circuit at that time, was an inquiry notice plus reasonable diligence test. That second part of that test is the Merck Supreme Court's test of reasonable diligence. When the Betz standard was adopted by the Ninth Circuit, it looked to the Sterling case in the Tenth Circuit as the source of that. If you read the Merck opinion in the Supreme Court, I believe it's on page 17 of the slip opinion, the Supreme Court cites to Sterling as one of the circuits that's already applying the reasonable diligence standard. This is precisely the standard Judge Fees applied, and after revealing, Judge Smith, the extraordinary detail of what was publicly disposed, this is what Judge Fees held. In short, and I'm quoting, a reasonably diligent plaintiff should have known the facts giving rise to the pending complaints more than two years before the complaints were filed. That is precisely the Merck standard, and I'm quoting there from excerpts of record at page 3. So and then Judge Fees noted that this is in his original opinion that the inquiry notice, and I think this is true in extraordinary cases like this, the inquiry notice and reasonable diligence test tend to merge because of the extraordinary amount of detail. Well, what we're really talking about and what we're really questioning about is whether this is just inquiry or whether it goes to the second part of the test, which you've aptly said Merck put on this test. But I guess my worry is, and I guess I join my colleague, it doesn't seem to me there's anything in the record prior to 2005 that a reasonably diligent plaintiff would have discovered facts leading to a strong, powerful, cogent inference that the defendants intended to deceive, manipulate, or defraud, which is tell-evs. I totally agree with you because they never engaged in any of that. And today you couldn't find that either. Well, so then why did they have to do something? That's the statute of limitations question. Consisting with Rule 11, he thought he had enough to allege sciencer in Corby in July 15, 2004. And again, two and a half years later, almost identical allegations. Here's the Chin complaint. This is what he says on it. Defendants allegedly, quote, carried out a plan, scheme, and course of conduct that, quote, deceived the investing public and, quote, employed devices, schemes, and artifice to defraud. And that's excerpt for the record at 189 to 90. So I agree, Judge Smith. There was no scienter here. This was perfectly legitimate practice, well-recognized, revenue-sharing. There's no duty to disclose it. There was no duty to disclose at the time. No SEC guidance, no case law, but defendants here disclosed it anyway. There was absolutely no intent to hide the ball. There could not be scienter here. But that doesn't mean he didn't plead it. Well, but it seems to me that I'm struggling between a notice or could a reasonable plaintiff have known or could have discovered. And I look at the 2005 stuff. I don't find anything. I look at the Corby complaint. It mentions, if you will, as I said even, in a broad sense, a fraud allegation. But there are no facts in there, really pled. So I'm still, we're still at notice. How do I get to the final leg that Merck puts on this case? I think that what you have to do is look at what the plaintiff did plead, what he thought was sufficient to highlight the center, and compare that to the facts. Was what was pled known or knowable two or two and a half years earlier? And the answer to that is yes, it was. What was pled, I agree with you, not sufficient. And there's another grounds briefed below at the district court level, briefed before here, of there's no failure to state a claim. But I don't think you need to go through that. This is our second trip to the Court of Appeals in this case now. We said go back and look because Merck's come down. Get yourself together. And my worry is the district court didn't really apply the second part of Merck. It looked at it very carefully. We had a conference before I was involved in both the Corby case and the Chin case. And it tried the Corby case before Judge Feese. We went back before Judge Feese last November after the remand from this court. We had an hour conference on the issues of the Merck case. He then had us simultaneously exchange briefs, and we exchanged those in November. He had us simultaneously exchange reply briefs, which we did in December. And then in February, he asked if there was any additional authority that we wanted to bring to his attention. So he carefully looked at this. This was thrashed out big time, and then we put that in the supplements of the record before you. So he thought, and I think he did it. He applied it. He looked to see what a reasonably diligent plaintiff should have known and found that he should have known it. I'm sorry. My time is up. It's quite all right, but thank you for your argument. And I think Mr. Reese has about a minute or so left. Thank you, Your Honor. Nope? Three minutes? Oh, he's already in the hole three minutes. Okay. Well, then I'll give you a minute on rebuttal. Thank you, Your Honor. I would just like to make one point. The key here is that a 10b-5 requires scienter. It is a very specialized element. It doesn't matter what Black's law says about it. Congress has spoken. I hate to keep harping on the same theme, but the issue is one of facts. That's correct. What facts did you have or would reasonably have been discoverable had you been diligent in order to establish the facts supporting scienter? Facts supporting a 10b scienter element did not exist until the March 23, 2005, California AG's office complaint was filed. At that point, you have internal documents, and you have the amount at issue, $450 million. Those are facts. They're not allegations. The amount of the money was known, was it not, in the SEC filings? Your allegation is that they hid the directed brokerage portion of those. There's two allegations. One pertains to directed brokerage, and one pertains to revenue sharing. Revenue sharing is money being paid to the investment advisors to then go do research, and what happened is that money wasn't used, and that's hundreds of millions of dollars. That money wasn't used for this purpose. You're saying it was misrepresented in a different category? That's correct. It's research as opposed to here are the commissions. That's correct, and what happened is instead of that money being used for research, and we're talking about hundreds of millions of dollars, which wasn't made known to the public until March 23, 2005, and that was used as kickbacks paid to brokers for no research whatsoever. Go ahead. You're already over a minute now. The minute order, which is how the court decided this, does not mention scienter whatsoever. To comply with Merck, the district court said, here are the elements that you should have known about. Here are facts, particular facts that show scienter. The district court did not do that, and you have defense counsel saying, hey, there's no scienter. So how can there be scienter that triggered the statute of limitations but no scienter? Well, the district court could find that there are no facts to support scienter, which I think is what he said. But then if that's the case, the statute of limitations couldn't have started running because investors would have known that there's scienter. Well, if he's right, then alternatively, you're out on the ground that you failed to adequately state a claim. Which if that's the case, we would seek leave to amend because there have been a number of additional facts that have been disclosed since the filing of this lawsuit, since the first appeal and the second appeal, that we could add to a complaint that would show scienter. Okay. All right. Thank you, Mr. Reese. Very well argued on both sides. The case just argued is submitted and will last here.
judges: Gilman, Tallman, Smith